Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EVA N. CRUZ CRUZ Y SOLISMAR RODRÍGUEZ RÍOS<br><br>Recurridos<br><br>V.<br><br>COOPERATIVA DE AHORRO Y CRÉDITO DE JAYUYA, INC.<br><br>Peticionaria | KLCE202500373 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.: L PE2014-0012<br><br>Sobre: Despido Injustificado, Represalias |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

La apelante, Cooperativa de Ahorro y Crédito de Jayuya, Inc. (Cooperativa de Jayuya o apelante), solicita que revoquemos la Sentencia Parcial en la que el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI) declaró Ha Lugar la Sentencia Sumaria de la apelada, Solismar Rodríguez Ríos (señora Rodríguez Ríos o apelada), por despido injustificado y represalias.

Los hechos que preceden la controversia que hoy atendemos son los siguientes.

**I.**

El 30 de mayo de 2014, las señoras Eva N. Cruz Cruz (señora Cruz Cruz) y la señora Rodríguez Ríos (en conjunto, co-querellantes) presentaron una querella contra la Cooperativa de Jayuya y el señor Jesús Encarnación Alvira por despido injustificado, violación a la Ley de la Corporación del Fondo del Seguro del Estado (CFSE), discrimen y represalias bajo el procedimiento laboral sumario. Las co-querellantes alegaron que, a mediados del 2012, mientras Jesús

Encamación Alvira ejercía sus funciones como presidente ejecutivo, llevó a cabo un patrón de hostigamiento, maltrato, abuso y humillaciones en contra de ambas por razón de género. Dicho patrón consistió específicamente en notificarles memos con alegadas violaciones y malas evaluaciones, cambiarles sus funciones a otras para las cuales no estaban preparadas, removerles equipo de trabajo, negarles vacaciones, amenazarles con demanda por difamación y hacerles comentarios sexistas sobre el trabajo de la mujer en la cocina y prefiriendo un hombre para ocupar sus empleos.

Así las cosas, en junio de 2013, las co-querellantes fueron suspendidas de empleo y sueldo por alegadas violaciones a las normas prestatarias y los términos de repago. Por su parte, la señora Rodríguez Ríos sostuvo que, tras presentar la querella ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos (Unidad Antidiscrimen), acudir a la CFSE y testificar ante la Corporación para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC), fue descendida al puesto de cajera como un castigo y fue sustituida por un hombre. Posteriormente, ambas querellantes fueron despedidas el 28 de mayo de 2014. A pesar de haber presentado un caso ante la Unidad Antidiscrimen, este no fue atendido para que así se le permitiera a la apelada litigar ante el tribunal.

Por su parte, el 9 de junio de 2014, la Cooperativa de Jayuya presentó contestación a la querella. Allí, alegó que actuó de conformidad con las disposiciones y las facultades establecidas en la Ley Núm. 255 de 28 de octubre de 2002, mejor conocida como la Ley General de Sociedades Cooperativas de Puerto Rico. Además, negó las alegaciones sobre el descenso de la señora Rodríguez Ríos, ya que su salario permaneció inalterado. Resaltó que todo personal había sido notificado previamente del "Proyecto de Reorganización y

Reestructuración Empresial Jayucoop 2014" que buscaba el que todos los empleados dominaran todas las áreas de la Cooperativa.

Luego de varios trámites procesales, el 1 de febrero de 2024, la señora Rodríguez Ríos presentó *Solicitud de Desistimiento Parcial,* en la cual expresó que no deseaba continuar con las reclamaciones de discrimen por sexo y edad bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, discrimen por género bajo la Ley Núm. 69 de 6 de julio de 1985 y la reclamación de daños a tenor con el Art. 5-A de la Ley 45-1935, según enmendada. Ante ello, el TPI dictó *Sentencia Parcial* y decretó el archivo con perjuicio de la demanda contra la Cooperativa de Jayuya, en cuanto a dichas causas de acción, sin especial imposición de costas, gastos y honorarios de abogado y, ordenó la continuación de los procedimientos de las causas de acción bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada y la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada.

No obstante, el 23 de julio de 2024, la señora Cruz Cruz presentó una *Solicitud de Desistimiento* de todas las causas de acción, ya que había firmado un acuerdo transaccional con la Cooperativa de Jayuya. El próximo día, el TPI emitió *Sentencia Parcial* y dio por desistida la acción de la señora Cruz Cruz con perjuicio.

Así pues, el 29 de junio de 2024, la apelante presentó *Solicitud de Sentencia Sumaria.* En esencia, sostuvo que no existen hechos materiales en controversia y que el despido de la señora Rodríguez Ríos fue justificado sin ningún ánimo ilegal, discriminatorio ni en represalias. En apoyo a su solicitud presentó la evidencia documental siguiente:

> **Exhibit 1 -** Manual de Personal de 2011 págs. 1-4, 14-15 y 42-43.

**Exhibit 2 -** Carta de terminación de empleo o despido de Solismar Rodríguez Ríos con fecha de 28 de mayo de 2014.

**Exhibit 3 -** Primera Amonestación Escrita de la Sra. Eva N. Cruz Cruz a la Sra. Solismar Rodríguez con fecha de 30 de octubre de 2012.

**Exhibit 4 -** Comunicación Interna con fecha de 16 de mayo de 2013 - Plan de Prueba, Sistema de Rotación en Servicio de Préstamos dirigida a la Sra. Eva N. Cruz Cruz (Supervisora de Préstamo), Sr. Ricardo Domínguez (Oficial de Préstamo) y Sra. Solismar Rodríguez (Oficial de Préstamo) y suscrita por Jesús M. Encarnación Alvira (Presidente Ejecutivo de Jayucoop).

**Exhibit 5 -** Comunicación Interna con fecha de 23 de mayo de 2013 sobre Presentación del Informe de Auditoría, Investigación y Evaluación del rendimiento de la Cartera de Préstamos de Jayucoop dirigida al Sr. Emigdio Sepúlveda (Presidente Junta de Directores) y a la Junta de Directores de Jayucoop suscrita por Jesús M. Encarnación Alvira (Presidente Ejecutivo de Jayucoop).

**Exhibit 6 -** Medidas disciplinarias por violaciones serias dirigida a Solismar Rodríguez con fecha de 6 de junio de 2013.

**Exhibit 7-** Comunicación Interna con fecha de 5 de agosto de 2013 sobre Proyecto de recogido urgente de producción de expedientes hipotecarios y sobres de solicitudes de préstamos en las áreas del Departamento de Crédito dirigida a la señora Cruz Cruz y suscrita por el Sr. Jesús M. Encarnación Alvira.

**Exhibit 8 -** Solicitud de documentos [D13-001-007] con fecha de 21 de enero de 2014 dirigida a Jesús M. Encarnación Alvira y suscrita por Edith L. González López. (Investigadora de Querellas, Denuncias y Consultas de COSSEC).

**Exhibit 9 -** Querella anónima a COSSEC con fecha de 20 de junio de 2013.

**Exhibit 10 -** Contestación a solicitud de documentos [D13-001-007] con fecha del 5 de febrero de 2014 suscrita por el Sr. Jesús M. Encarnación Alvira y dirigida a la Sra. Edith L. González López.

**Exhibit 11 -** Solicitud de documentos [D13-001-007] con fecha de 18 de febrero de 2014 dirigida a Jesús M. Encarnación Alvira y suscrita por Edith L. González López (Investigadora de Querellas, Denuncias y Consultas de COSSEC).

**Exhibit 12 -** Resultados investigación de COSSEC [D13-00-007] con fecha de 30 de abril de 2014 suscrito por Claribel Vera García (Sub-directora de la División de Querellas

**Exhibit 13 -** Información Adicional para el Comité de Crédito, Hoja de Cotejo, Autorización de Descuentos Préstamo Emergencia y Solicitud de Préstamo de Emergencia.

**Exhibit 14 -** Deposición de Solismar Rodríguez Ríos págs. 37-38 y 40-43.

Por su parte, el 10 de septiembre de 2024, la apelada presentó la *Oposición a Moción de Sentencia Sumaria y Solicitud para que se dicte Sentencia Sumaria a favor de la coquerellante.* Allí, negó varios hechos propuestos por la parte querellada, en su mayoría por: no ser evidencia pertinente y por constituir prueba de referencia. Además, presentó moción de sentencia sumaria a su favor por despido injustificado y represalias. Se anejó la evidencia documental siguiente:

**Exhibit 1 -** Declaración jurada de Solismar Rodríguez Ríos.

**Anejo 1 -** Normas Prestatarias Generales 2012 (pág. 5 y Certificación).

**Anejo 2 -** Deposición de la Sra. Solismar Rodríguez Ríos (págs. 10-13, 37-39, pág. 66 y Certificación).

**Anejo 3 -** Transcripción de deposición oral de Celeste A. Rodríguez (pág. 7).

**Anejo 4 -** Comunicación Interna con fecha de 16 de mayo de 2023 - Plan de Prueba, Sistema de Rotación en Servicio de Préstamos dirigida a Sra. Eva N. Cruz Cruz (Supervisora de Préstamo), Sr. Ricardo Domínguez (Oficial de Préstamo) y Sra. Solismar Rodríguez (Oficial de Préstamo) y suscrita por Jesús M. Encarnación Alvira (Presidente Ejecutivo de Jayucoop).

**Anejo 5 -** Impugnación de suspensión temporera de empleo y sueldo con fecha de 12 de junio de 2013 dirigida a la Junta de Directores de la Cooperativa de Ahorro y Crédito de Jayuya y suscrita por Eva Cruz Cruz y Solismar Rodríguez Ríos.

**Anejo 6 -** Carta del 24 de junio de 2013 suscrita por el presidente de la Junta de Directores, el Sr. Emigdio Sepúlveda Rivera y dirigida a las señoras Eva N. Cruz Cruz y Solismar Rodríguez Ríos.

**Anejo 7 -** Carta del 25 de junio de 2013 suscrita por Eva Cruz Cruz y Solismar Rodríguez Ríos y dirigida al Sr. Emigdio Sepúlveda Rivera, presidente de la Junta de Directores.

**Anejo 8 -** Carta del 12 de julio de 2013 dirigida al Departamento de Querellas de COSSEC y suscrita por Solismar Rodríguez.

**Anejo 9 -** Certificación de acuse de recibo entrega de Normas Prestatarias a Solismar Rodríguez con fecha del 16 de julio de 2013.

**Anejo 10 -** Certificación de acuse de recibo entrega de Normas Prestatarias a Solismar Rodríguez con fecha del 16 de julio de 2013.

**Anejo 11 -** Carta del 24 de julio de 2013 dirigida a la Sra. Solismar Rodríguez Ríos y suscrita por el Sr. Emigdio Sepúlveda Rivera, presidente de la Junta de Directores.

**Anejo 12 -** Manual de Personal de 2011 págs. 40-41 y 43.

**Anejo 13 -** Querella presentada ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos presentada el 2 de agosto de 2013.

**Anejo 14 -** Comunicación Interna con fecha de 5 de agosto de 2013 sobre Proyecto de recogido urgente de producción de expedientes hipotecarios y sobres de solicitudes de préstamos en las áreas del Departamento de Crédito dirigida a la Sra. Eva N. Cruz Cruz y suscrita por el Sr. Jesús M. Encarnación Alvira.

**Anejo 15 -** Enmienda a querella ante la Unidad Antidiscrimen del 13 de diciembre 2013.

**Anejo 16 -** Carta con fecha de 19 de marzo de 2014 sobre Proceso de Restructuración y Reorganización Empresarial Jayucoop 2014, Traslado permanente al Depto. de Cajeros dirigida a la Sra. Solismar Rodríguez Ríos y suscrita por la Sra. Celeste Rodríguez, Supervisora de Operaciones y el Sr. Jesús M. Encarnación Alvira, Presidente Ejecutivo.

**Anejo 17 -** Carta del 2 de mayo de 2014 dirigida a Solismar Rodríguez Ríos de la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos.

**Anejo 18 -** Procedimiento para la aprobación de préstamos a Directores, Miembros de Comités, Funcionarios Ejecutivos y Empleados.

El 30 de septiembre de 2024, la apelante presentó *Réplica a la oposición de la solicitud de sentencia sumaria y oposición a la solicitud de sentencia sumaria* instada por la parte apelada. En resumen, esta sostuvo que Rodríguez Ríos no presentó prueba de refutación para ninguno de los hechos materiales establecidos por la Cooperativa y que la oposición a la sentencia sumaria está

fundamentada en hechos establecidos mediante un *sham affidavit*. Además, la Cooperativa expuso que esos hechos resultan impertinentes sobre la razón del despido y la parte apelada no logró establecer ni tan siquiera un caso *prima facie* de represalias ante la inexistencia de nexo causal y temporal entre la supuesta actividad protegida y el posterior despido.

Luego, el 15 de octubre de 2024, la apelada presentó *Dúplica a moción de sentencia sumaria y solicitud para que se dicte sentencia sumaria a favor de la coquerellante* y alegó que la ausencia de razonabilidad en las reglas, reglamentos y normas del trabajo pueden convertir el despido en uno injustificado. Además, con relación a la defensa afirmativa de un *sham affidavit*, esta expresó que la Cooperativa de Jayuya no presentó prueba para establecer que la primera había ofrecido una declaración anterior cuyo contenido es incompatible con la declaración.

Así las cosas, el TPI dio por sometidas las mociones de *Sentencia Sumaria* y determinó los siguientes hechos incontrovertidos:

1. El Manual de Personal vigente para el momento del despido de la Sra. Solismar Rodríguez Ríos fue aprobado el 16 de junio de 2011.

2. El Sr. Jesús Encarnación Alvira fue nombrado Presidente Ejecutivo de la Cooperativa de Ahorro y Crédito de Jayuya en octubre del 2012 y para esa fecha la Sra. Solismar Rodríguez Ríos trabajaba como oficial de crédito.

3. La Sra. Solismar Rodríguez Ríos trabajó como Oficial de Crédito hasta el 24 de marzo de 2014 que comenzó a ocupar el puesto de cajera.

4. El traslado de la Sra. Rodríguez Ríos al Departamento de Cajeros obedeció a un proceso de reestructuración y reorganización empresarial de la Cooperativa con el propósito de establecer cambios positivos en la calidad de los servicios a los socios, una mejor efectividad en los controles internos, resultados de una mejor productividad, mejorar el compromiso de los empleados hacia su trabajo, una eficiente imagen corporativa, mejores resultados de cumplimiento de cada auditoría, y una mejor condición financiera para la Cooperativa.

5. El proceso de reestructuración incluyó que algunos empleados fueran trasladados de un Departamento a otro, procesos de reclutamiento y activación de nuevas plazas de trabajo.

6. En octubre de 2013 también se trasladó al oficial de crédito Ricardo Domínguez como oficial de cobros.

7. El 30 de octubre de 2012 la Sra. Rodríguez Ríos fue amonestada por escrito por la supervisora de préstamo, la Sra. Eva N. Cruz Cruz, por múltiples violaciones a las normas de la Cooperativa por hechos ocurridos en la mañana del sábado, 27 de octubre de 2012.

8. El escrito está intitulado como primera amonestación escrita y las violaciones fueron por: abandonar el trabajo durante la jornada sin la autorización del supervisor; tomar más tiempo de receso que el permitido; incumplir injustificadamente las instrucciones respecto a su trabajo y obligaciones para con la Cooperativa; desobedecer las órdenes o instrucciones dadas por el Supervisor o dejar de, o negarse a, sin justificación a ejecutar un trabajo que le corresponde; utilizar el horario y el lugar de trabajo para promover actividades no autorizadas o de interés personal; y utilizar teléfonos celulares en horas laborables.

9. El 16 de mayo de 2013, el Sr. Jesús M. Encarnación Alvira, presidente de Jayucoop para el momento de los hechos, dirigió una comunicación interna a la Sra. Eva N. Cruz Cruz, supervisora de préstamo, al Sr. Ricardo Domínguez y Solismar Rodríguez, oficiales de préstamo, sobre un plan de prueba que consiste en un sistema de rotación en tres (3) procesos y tareas: (1) radicación de préstamo; (2) evaluación y análisis de riesgo; y (3) procesos de desembolso.

10. El Plan de Prueba comenzó el 20 de mayo de 2013.

11. Este Plan de Prueba fue recomendado en el inciso 12, página 15 del Informe de Auditoría.

12. El 23 de mayo de 2013, el Sr. Encarnación Alvira emitió un comunicado intitulado Presentación del Informe de Auditoría, Investigación y evaluación del rendimiento de la Cartera de Préstamos de Jayucoop al presidente de la Junta de Directores, Sr. Emigdio Sepúlveda y a la Junta de Directores.

13. Dicho informe se realizó porque al analizar y evaluar la distribución de la cartera de préstamos de la Cooperativa, se identificó un comportamiento de madurez no muy positivo en la amortización de cada préstamo.

14. El informe tuvo como propósito mejorar la forma de administrar los servicios y productos financieros de la Cooperativa.

15. El hallazgo número 17 del Informe dispone que todos los préstamos garantizados no cumplen con las leyes federales de Patriot Act y BSA, ya que los oficiales no verifican la fuente de repago, ingresos, ni empleo, ni capacidad de pago, ni tampoco hacen verificación de OFAC.

16. El informe concluyó que muchas de las tendencias establecidas en los hallazgos pueden ser el producto de: la falta de capacitación; inexperiencia; falta de capacidad profesional especializada como empleados designados a Oficiales de crédito; malas prácticas de análisis de riesgo; falta de conocimientos técnicos sobre el análisis del riesgo; necesidad de conocimientos en cultura de venta en ambientes financieros; la falta de conocimientos sobre la importancia de maximizar el rendimiento de los activos o recursos financieros; y el uso inadecuado de las Normas Prestatarias como las guías aprobadas por la Junta de Directores de acuerdo con la Ley 255.

17. En una carta con fecha de 6 de junio de 2013 el Presidente Ejecutivo de la Cooperativa de Ahorro y Crédito de Jayuya le impuso a la querellante Sra. Solismar Rodríguez Ríos la medida disciplinaria de suspensión de empleo y sueldo por una semana por cinco violaciones serias a las políticas y normas de la Cooperativa: apartarse sin autorización de las Normas Prestatarias de la Cooperativa; descuido o negligencia en el desempeño de sus funciones como Oficial de Crédito; deberes y obligaciones de los empleados para trabajar con el plan estratégico de prueba en forma de rotación, el cual no se llevó a cabo en su totalidad; incumplir injustificadamente las instrucciones respecto a su trabajo y obligaciones para con la Cooperativa; y desobedecer las órdenes o instrucciones dadas por su supervisor o dejar de o negarse a, sin justificación, ejecutar un trabajo que le corresponde.

18. El 12 de junio de 2013 la querellante presentó una Carta de Impugnación de Suspensión Temporera de Empleo y Sueldo ante la Junta de Directores de la Cooperativa.

19. El Presidente Ejecutivo y la Junta de Directores se reafirmaron en la medida disciplinaria impuesta.

20. El 16 de julio de 2013 se le entregó a Solismar Rodríguez Ríos las Nuevas Normas Prestatarias enmendadas que habían sido aprobadas el 10 de julio de 2013 y que serían utilizadas a partir del 17 de julio de 2013.

21. El 2 de agosto de 2013 la querellante Rodríguez Ríos presentó una Querella por Discrimen por Sexo ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos de Puerto Rico.

22. El 5 de agosto de 2013 el Sr. Encarnación envío un comunicado a la Sra. Cruz intitulado "Proyecto de recogido urgente de producción de expedientes hipotecarios y sobres de solicitudes de préstamos en las áreas del Departamento de Crédito". A través de dicho documento se impartió la instrucción de trasladar dichos expedientes al área de archivo cuyo acceso sería controlado por la Oficial de Cumplimiento.

23. El propósito del recogido de los expedientes fue crear un inventario para luego trasladarlos a un archivo en donde el acceso será controlado por el Oficial de Cumplimiento y posteriormente por el Oficial de Custodia y Seguridad para llevar a cabo una bitácora sobre el acceso a los mismos, según fue recomendado por COSSEC, las diferentes auditorías, la Junta de Directores, el Comité de Supervisión y el propio Presidente Ejecutivo.

24. El 13 de diciembre de 2013 la querellante Rodríguez Ríos enmendó la querella que presentó ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos para incluir nuevos cargos.

25. El 2 de mayo de 2014 la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos de Puerto Rico le concedió a la querellante Rodríguez Ríos permiso para litigar en el tribunal.

26. La Sra. Rodríguez Ríos trabajó para Jayucoop hasta el 28 de mayo de 2014, fecha en que fue despedida.

27. El 8 de diciembre de 2011 la Junta de Directores de la Cooperativa de Ahorro y Crédito de Jayuya aprobó el Procedimiento para la aprobación de préstamos a Directores, Miembros de Comités, Funcionarios Ejecutivos y Empleados.

28. El Procedimiento establece que cuando miembros de la Junta de Directores, miembros de los Comités, funcionarios ejecutivos y empleados soliciten préstamos, dicho miembro, funcionario ejecutivo o empelado no participará en la aprobación o denegación del préstamo. Sino que para la aprobación o denegación del préstamo tendrá que estar presente con el Comité de Crédito un miembro del comité de supervisión cuando los préstamos solicitados fueran en exceso de sus haberes.

29. El 8 de junio de 2013 la querellante Solismar Rodríguez Ríos fue la empleada que radicó el préstamo de emergencia solicitado por la supervisora de préstamos, la Sra. Eva N. Cruz Cruz.

30. En la solicitud del préstamo de emergencia se hizo constar que se incluyó copia del contrato de arrendamiento como parte de otros ingresos mensuales de la Sra. Cruz Cruz, por lo que la querellante sometió

evidencia de la fuente de repago y en la hoja de cotejo surge que también se sometieron reportes de crédito.

31. Del documento intitulado Información adicional para el Comité de Crédito, el cual es parte de la solicitud, no surge que la querellante Solismar Rodríguez Ríos haya hecho sugerencias y/o recomendaciones al Director Ejecutivo. El único encasillado que fue marcado por la querellante en dicha parte fue para expresar que el préstamo anterior fue con garantía propia.

32. El préstamo de la Sra. Eva Cruz Cruz fue aprobado por el Comité de Crédito y un miembro del Comité de Supervisión.

33. En la carta de terminación de empleo surge que la razón del despido fue porque la querellante no analizó prudentemente la documentación necesaria y sometió una opinión y recomendación positiva de la solicitud de préstamo de la empleada gerencial al Comité de Crédito, que el préstamo fue aprobado y desembolsado y que dicho acto fue señalado críticamente en una investigación especial realizada por COSSEC.

Finalmente, el 25 de marzo de 2025, notificada el 31 de marzo de 2025, el TPI dictó *Sentencia Parcial,* en la que declaró Ha Lugar la *Moción de Sentencia Sumaria* de la señora Rodríguez Ríos y condenó a la Cooperativa de Jayuya a pagar la cantidad de $13,444.49 por concepto de mesada y $2,017.212 por concepto de honorarios de abogado, correspondiente al 15% de la cantidad adjudicada por mesada, más intereses legales 8.75% a computarse a partir desde la fecha en que dictó la *Sentencia.* A tenor de dicha determinación, el TPI, además, ordenó la celebración de una vista evidenciaria para que la señora Rodríguez Ríos presente la evidencia correspondiente a los efectos de probar los daños reclamados y los salarios dejados de devengar bajo la Ley Núm. 115-1991.

Inconforme con el proceder del TPI, la Cooperativa de Jayuya presentó este recurso en el que alega que:

PRIMER ERROR: el TPI incurrió en grave error manifiesto, conforme a derecho al dictar mediante sentencia parcial que el despido de la Sra. Solismar Rodríguez fue injustificado y en represalias.

SEGUNDO ERROR: El TPI incurrió en grave error manifiesto en su interpretación de la prueba que consta en autos, descartando, contrario a derecho, prueba

pertinente y admisible, para determinar que el despido fue injustificado y en represalias.

TERCER ERROR: El TPI incurrió en grave error manifiesto, pasión, perjuicio y/o parcialidad al eliminar los exhibits 8-12 de la parte peticionaria.

CUARTO ERROR: El TPI incurrió en pasión, prejuicio y/o parcialidad al emitir la sentencia parcial y dictar que el despido de la Sra. Rodríguez fue injustificado y en represalias, a pesar de que la evidencia de este caso demuestra la justa causa del despido y, además, que no existe proximidad temporal entre la participación de la actividad protegida levantada por la recurrida y su separación de empleo.

## II.

### A. Moción de Sentencia Sumaria

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el

descubrimiento de prueba, según lo dispuesto en la Regla 36.2, 32 LPRA Ap. V. La Regla 36 contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra*. La sentencia sumaria no puede dictarse cuando: (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Universal Ins. y otro v. ELA y otros, supra,* pág. 472.

Las declaraciones juradas en apoyo u oposición a la moción de sentencia sumaria tienen que estar basadas en el conocimiento personal del o de la declarante, contener hechos admisibles en evidencia y demostrar que el declarante está cualificado para declarar sobre su contenido. Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico resolvió en *Ramos Pérez v. Univisión,* 178 DPR 200, 216 (2010), que las declaraciones juradas con solo conclusiones y sin hechos específicos que las apoyen, no tienen valor probatorio y son insuficientes para demostrar la existencia de lo que allí se concluye. Las declaraciones juradas que son meramente conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal, son insuficientes para derrotar una moción de sentencia sumaria.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra,* y aplicar los criterios que esa regla y

su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Cruz, López v. Casa Bella y otros, supra*; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

## B. Despido Injustificado

El Tribunal Supremo de Puerto Rico aclaró en *Ortiz Ortiz v. Medtronic,* 209 DPR 759 (2022), que la enmienda introducida por la Ley Núm. 4 de 2017 conocida como Ley de Transformación y Flexibilidad Laboral, 29 LPRA sec. 121 y siguientes, sobre el esquema probatorio de las reclamaciones laborales al amparo de la Ley Núm. 80-1976, no es retroactiva por ser una norma de carácter procesal. La ley 80 de 30 de mayo de 1976 fue aprobada para garantizar que los empleados despedidos sin justa causa tuviesen derecho a recibir de su patrono una compensación y desalentar el despido injustificado. Véase Exposición de Motivos de la Ley 80, supra. Sus propósitos primordiales son: (1) desalentar la práctica de despedir empleados sin justa causa y (2) proveer a los empleados remedios consustanciales a los daños causados por los despidos injustificados. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra, pág. 771. El Artículo 1 de la Ley Núm. 80-1976, concede una indemnización económica al trabajador contratado sin tiempo determinado que trabaja mediante remuneración y que es despedido

sin justa causa.  29 LPRA sec. 185 (a).  El resarcimiento se conoce como mesada y es el remedio exclusivo para los empleados despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despido.  *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra.

La Ley Núm. 80, supra, no define lo que es el despido injustificado.  Sin embargo, expone de forma ilustrativa ciertas instancias en las que se justifica el despido de un empleado por parte del patrono y que están fundamentadas en la conducta del empleado y en razones de índole empresarial.  Estas son:

> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente.  Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento.  En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.  29 LPRA 185b; *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra, pág. 772; *León Torres v. Rivera Lebrón,* 204 DPR 20, 37 (2020).

No obstante, el despido motivado por el capricho del patrono o sin una razón vinculada con el buen y normal funcionamiento del establecimiento, no se considera justa causa.  Tampoco constituirá justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su

patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley 29 LPRA sección 185 b.

La ausencia de razonabilidad en las exigencias de conducta de los empleados puede convertir el despido en caprichoso o arbitrario.  La ley no dispone un mínimo de amonestaciones, antes de que el patrono pueda despedir al empleado justificadamente, ni tampoco que la amonestación debe hacerse en determinada forma.  Cuando el despido obedece a violaciones a las normas del empleo, el patrono tiene que demostrar que: (1) las reglas para el funcionamiento del establecimiento son razonables, (2) le suministró una copia escrita de las normas al empleado y (3) el empleado las violó reiteradamente.  *Ortiz Ortiz v. Medtronic, supra*, págs. 772-774.

En cuanto a la presunción establecida por la Ley Núm. 80*, supra,* a los efectos de que el despido es injustificado, toca al patrono rebatir dicha presunción mediante prueba preponderante que demuestra que el despido fue justificado.  Es decir, la Ley Núm. 80, *supra*, invierte el orden de la prueba en casos civiles.  Rompe con el paradigma de que es el reclamante quien está obligado a probar sus alegaciones para prevalecer en un pleito, correspondiendo al demandante, el empleado, únicamente demostrar que fue empleado de un comercio, industria u otro negocio; que su contrato era por tiempo indeterminado; que recibía remuneración por su trabajo, y que fue despedido de su puesto para activar la presunción.  Activada la presunción, el patrono está obligado a aportar prueba para rebatir la misma y persuadir al juzgador mediante preponderancia de la evidencia que el despido obedece a una causa justificada.  *Ortiz Ortiz v. Medtronic, supra*, págs. 774-775.

### C. Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial

La Ley Núm. 115-1991, 29 LPRA sec. 194 et seq., conocida como la Ley de Represalias, establece una política pública a favor de proteger los empleos de los trabajadores. La protección establecida cobija a los trabajadores de las instrumentalidades del Estado Libre Asociado y a los del sector privado, cuando comparecen ante los foros legislativos, administrativos o judiciales para prestar su colaboración. *Feliciano Martes v. Sheraton*, 182 DPR 368, 392 (2011). Esta legislación protege al trabajador de represalias por parte del patrono, por dar su testimonio, proveer información o hacer expresiones verbales o escritas ante esos foros. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 361 (2009); *Ocasio v. Kelly Servs.*, 163 DPR 653, 684 (2005). Sus protecciones se extienden a acciones en las que las represalias son por expresiones o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. 29 LPRA sec. 194 (b)(a).

Si la reclamación de represalias prospera, el demandante podrá recibir una indemnización por: (1) los daños reales sufridos, (2) las angustias mentales, (3) la restitución en el empleo, (4) salarios y beneficios dejados de percibir y (5) honorarios de abogado. 29 LPRA sec. 194 (b).

El empleado puede establecer un caso de represalias de dos maneras distintas. La primera es mediante evidencia directa o circunstancial que demuestre un nexo causal entre la conducta del patrono demandado, la actividad protegida y el daño sufrido. La segunda es estableciendo una presunción *juris tantum* o un caso

*prima facie.* La presunción se activa cuando el empleado prueba que: (1) participó en una actividad protegida por la ley y que (2) subsiguientemente fue despedido, amenazado o discriminado en su empleo y (3) existe un nexo causal entre la conducta protegida y la acción disciplinaria o adversa del patrono. *Feliciano Martes v. Sheraton, supra,* pág. 396; Rivera Figueroa v. AAA, supra, pág. 362. Una vez el empleado prueba su caso *prima facie,* al patrono le corresponde rebatir la presunción. El patrono tiene que alegar y fundamentar una razón legítima y no discriminatoria para la acción adversa. Demostrado, corresponde al empleado probar que la razón que el patrono alega es un mero pretexto para la acción adversa. 29 LPRA sec. 194b(c)*; SLG Rivera Carrasquillo v. AAA, supra,* pág. 362. La proximidad temporal es suficiente para establecer el tercer requisito de un caso *prima facie.* Si el patrono realiza la acción adversa inmediatamente después que el empleado le informa que ha incursionado en una actividad protegida, se entiende que el elemento de proximidad temporal bastará para establecer el requisito de la existencia de un nexo causal. Por el contrario, cuando el periodo de tiempo entre el ejercicio de la actividad protegida y la subsiguiente acción adversa del patrono aumenta, el criterio de la proximidad temporal resultará menos útil para comprobar, en el establecimiento de un caso prima facie, que existe un nexo causal entre ambos eventos. *Feliciano Martes v. Sheraton, supra,* págs. 397-399. No obstante, en ausencia de prueba de proximidad puede demostrar el nexo causal entre la actividad protegida y la acción disciplinaria adversa mediante evidencia de que: (1) recibió un trato distinto a otros empleados, (2) existió un patrón de conducta antagónica en su contra, (3) las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias y (4) cualquier otra evidencia que

obre en el expediente para establecer el elemento del nexo causal. *Feliciano Martes v. Sheraton, supra*, pág. 400.

**III.**

Primeramente, aclaramos que, aunque el recurso fue presentado como un Certiorari estamos ante la determinación final de varias causas de acción, por lo que nos encontramos revisando una Sentencia Parcial. Corresponde entonces tratar el recurso como una apelación, aunque mantengamos la codificación numérica según presentado.

En los méritos, la Cooperativa de Jayuya alega que erró el TPI al declarar que el despido de la señora Rodríguez Ríos fue injustificado y en represalias. La apelante sostiene que la prueba demostró justa causa para el despido y que no existió proximidad temporal entre la participación de la actividad protegida levantada por la apelada y su separación de empleo. Por último, arguye que el TPI incidió al descartar prueba pertinente y admisible para determinar que el despido fue injustificado y en represalias.

No le asiste la razón. Según se expuso, la apelada antes de su despido fue amonestada en dos ocasiones, el 30 de octubre de 2012 por escrito y el 6 de junio de 2013 con una suspensión del empleo y sueldo por una semana. Sin embargo, no fue hasta el 28 de mayo de 2014 que la apelada fue despedida. Por lo tanto, podemos entender que las amonestaciones anteriores no satisfacen los criterios para establecer un nexo causal, ya que ocurrieron por lo menos uno y dos años antes del despedido de la apelada.

Además, surge de la carta de despido de la señora Rodríguez Ríos y así lo aceptó la apelante, que la terminación del empleo fue a causa del préstamo otorgado a la señora Cruz Cruz, ya que esto fue lo que motivó una investigación ante COSSEC, ente regulador de la Cooperativa.

Ahora bien, el proceso para otorgar un préstamo en la Cooperativa se dividía en tres etapas: (1) radicación de préstamo, orientación y recibo de documentos; (2) evaluación, análisis y determinación de préstamo; (3) procesos de desembolso y cierre.[1]

Sin embargo, cuando se tratara de préstamos solicitados por funcionarios ejecutivos de la Cooperativa, existían requisitos adicionales para otorgar el mismo. Ahora bien, en el apéndice ante nos, la apelante incluyó de forma incompleta el documento de *Procedimiento para la aprobación de préstamos a Directores, Miembros de Comités, Funcionarios Ejecutivos y Empleados.* No obstante, surge de la *Sentencia Parcial* y la deposición de la apelada*,* que, en el referido documento, el proceso de evaluación y análisis de riesgo (la aprobación) de préstamos a funcionarios ejecutivos, le corresponde al Comité de Crédito y Comité de Supervisión.[2]

Al respecto, la señora Rodríguez Ríos en su deposición expresó que, como Oficial de Crédito, únicamente se limitó a completar la radicación del préstamo en controversia y no sometió recomendación alguna sobre su aprobación.[3] Ante ello, no estamos de acuerdo con la apelante que dicha falta fue lo suficientemente crasa para prescindir de sus servicios. Esto, ya que, la propia normativa de la Cooperativa indica que la apelada no tiene facultad de aprobar el préstamo y tampoco surge que esta emitió recomendación alguna. Por lo tanto, en ausencia de una razón legítima para el despido de la señora Rodríguez Ríos, concluimos que este fue injustificado.

Ahora bien, en cuanto al señalamiento de error del despido por represalias, resolvemos que en efecto se cometió. Según se expuso, el 2 de mayo de 2014, la Unidad Antidiscrimen le otorgó el permiso a apelada de litigar en el Tribunal. El 28 de mayo de 2014,

---

[1] Véase, Apéndice del Recurso de *Apelación,* pág. 127.
[2] Véase, Apéndice del Recurso de *Apelación,* págs. 2(XXX) y 121.
[3] Véase, Apéndice del Recurso de *Apelación,* págs. 121-123.

esta fue despedida y dos días después presentó la querella del epígrafe. De estos hechos, podemos concluir que la apelada demostró un caso *prima facie* de represalias, ya que 26 días después de que se le concede permiso para llevar la causa de acción contra su patrono al tribunal, es despedida. Por ende, en cumplimiento con la normativa antes reseñada, se cumplió con el requisito de proximidad, ya que pasó menos de un mes desde que la apelada informó que iría al Tribunal para hacer valer su reclamo, que conllevó la terminación de su empleo.

Por otra parte, en los autos del expediente ante nos, la apelante no nos puso en posición para que podamos determinar si la prueba sometida en los Exhibits del 8 al 12 no son prueba de referencia. El TPI entendió que los referidos Exhibits son prueba de referencia, ya que el señor Jesús Encarnación Alvira y COSSEC no son parte o testigo en el pleito. Si la apelante quería impugnar dicha determinación, tenía que incluir en el expediente prueba de que estos fueron nombrados de esa forma o debía presentar argumentos válidos por los cuales no es prueba de referencia. A manera de ejemplo, la apelante pudo presentar el "Informe para el Manejo de Caso", que contiene las partes y testigos que serán presentadas en el litigio. No obstante, en su recurso de *Apelación* esta se limitó a hacer meras alegaciones, que no pueden sustituir la determinación del TPI. Por lo tanto, este tribunal está obligado a reconocer la deferencia del foro de instancia.

### IV.

Por los fundamentos antes expresados, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones